## Case No. 22-2908

IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA

v.

VICTOR CLAYTON,
*Appellant*

Appeal from the judgment entered on September 29, 2022,
in the United States District Court for the Eastern District of Pennsylvania,
Hon. R. Barclay Surrick, at Criminal No. 18-524-RBS-1

## BRIEF OF APPELLANT AND JOINT APPENDIX VOLUME I
### (Joint Appendix, pages 1-26)

LUIS A. ORTIZ, ESQUIRE
CJA Counsel in the
Eastern District of Pennsylvania


Attorney for Appellant,
Victor Clayton

Law Offices of Luis A. Ortiz Esq.
121 South Broad Street, 18th Floor
Philadelphia, Pennsylvania 19107
(215) 858-3787

## Table of Contents

Page

Statement of Jurisdiction............................................................................1

Statement of the Issues, Procedural History and Standards of Review....................2

Statement of Related Cases and Proceedings ............................................4

Statement of the Case................................................................................5

Argument One............................................................................................9

The district court erred in denying defendant's motion to
dismiss pursuant to federal Rule of Criminal Procedure 12
(b)(3) counts One and Two of the Indictment charging sex
trafficking of a minor for failure to state an offense? That is
because the facts presented by the government in the
defendant's case, as applied, make out a wholly domestic
offense that congress never intended to address when it enacted
18 U.S.C. § 1591 and is unconstitutional as applied to the
defendant. ..........................................................................................

Argument Two ............................................................................................

The district court erred in denying defendant's motion to
withdraw his guity plea because the government breached the
plea agreement by including unconstitutional terms. .................................... 17

Conclusion ...............................................................................................24

Certifications of Counsel .........................................................................25

## Table of Authorities

Page

**Cases**

*Asakura v. City of Seattle*,
265  U.S. 332 (1924) .........................................................15

**Bond v United States**,
572 U.S. 134 S. Ct. 2077 (2014)).................................... 10,13,14,15,16

*Boykin v. Alabama*
395 U.S. 238  (1969) .........................................................19

*Brady v. United States,*
397 U.S. 742 (1970) .........................................................18

*Carey  v. Piphus,*
98 S. Ct. 1042 (1978) .........................................................20

*Cohen v. Virginia*,
19 U.S. 264 (1821) .........................................................10

*De Leon-Reynoso v. Ashcroft,*
293 F.3d 633 (3d Cir. 2002) ..................................................3

**Geofroy v. Riggs,**
133 U.S. 258 (1890) .........................................................15

**Gregory v. Aschcroft,**
501 U.S. 452 (1991) .........................................................15

**In re Morgan**,
506 F3d. 705 (9th Cir. 2007) .................................................22

**In re Ross**,
140 U.S. 453 (1891) .........................................................15

*McCarthy  v. United States*
394 U.S. 459 (1969) .........................................................21

***Sabri v. United States,***
    541 U.S. 600 (2004) ........................................................11

***Santobello v. New York***,
    404 U. S. 257 (1971) ........................................................18

***United States v. Bernard***,
    373 F.3d 339 (3d Cir. 2004) ............................................23

***United States v. Carnine***,
    974 F. 2d. 924 (7th Cir. 1992) ........................................20

***United States v. Comstock***,
    560 U.S. 126 (2010) ........................................................11

***United States v. Cook***,
    722 F.3d 477 (2d Cir. 2013) ............................................20

**United States v. Curtiss-Wright Export Corp,**
    229 U.S. 304 (1936) ........................................................16

***United States v. Crusco***,
    536 F.2d. 21 (3d Cir. 1976) ............................................19

***United States v. Cunavalis***,
    969 F.2d 1419 (2d Cir. 1992). ........................................22

***United States v. Dozier***,
    119 F.3d 239 (3d Cir.1997) ............................................19

***United States v. Fotiades-Alexander,***
    331 F. Supp. 2d 350 (EDPA 2004) ................................19

***United States v. Gilchrist***,
    130 F.3d 1131 (1997) ......................................................19

***United States v.  Hammond***,
    139 S. Ct. 2369 (2019), ..............................................8,17

***United States v. Mergen***,
    764 F.3d 199 (2d Cir. 2014) ..........................................20

*United States v. Moscahlaidis,*
   868 F.2d. 1357 (3d Cir.1989) .......................................................... 17,18

*United States v. Mukai,*
   26 F.3d 953 (9th Cir. 1994) ................................................................22

*United States v. Partida-Parra,*
   859 F.2d. 629 (9th Cir. 1988) ...........................................................19

*United States v. Ready,*
   82 F.3d 551 (2d Cir. 1996) ...............................................................20

*United States v. Rivera,*
   357 F.3d 290 (3d Cir. 2004) ..............................................................3

*United States v. Self,*
   596 F.3d 245 (5th Cir. 2010) .............................................................22

*United States v. Sullivan,*
   451 F. 3d 884 (DC Cir. 2006) ..........................................................15

*United States v. Wells,*
   211 F.3d 988 (6th Cir. 2000) ............................................................20

*United States v. yednak,*
   187 F. Supp. 2d 419 (3d Cir. 2002) .................................................22

*Von Moltke v. Gillies,* ......................................................................19
   332 U.S. 708 (1948)

## Statutes

18 U.S.C. § 229(a) ...........................................................................14

18 U.S.C. § 1591(a)(1) ............................................................ *2,5,7,9,11*

18 U.S.C. § 1594 ................................................................................5

18 U.S.C. § 3231 ................................................................................1

18 U.S.C. § 3583(k) ........................................................................8,17

22 U.S.C. § 7101 .......................................................................... 11,12

## Constitutional Provisions

Art II, § 2 ................................................................................................ 10,14

Art I, § 8 ...................................................................................................10

Tenth Amendment ......................................................................................9

## Other Provisions

Fed. R. Crim P. 12(b)(3) ...................................................................... 2,15,16

Fed. R. Crim P. 11(c)(1)(C) .......................................................................5

Victims of Trafficking and Violence Protection Act (TVPA)................................11

United Nations Protocol to Prevent, Suppress and Punish Trafficking

in Persons (UNTOC)....................................................................................

v

## Statement of Jurisdiction

The United States District Court for the Eastern District of Pennsylvania had subject matter jurisdiction under 18 U.S.C. § 3231 (district court jurisdiction over "all offenses against the laws of the United States"). In an appeal from the final judgment in a criminal case, courts of appeals have jurisdiction under 28 U.S.C. § 1291 (jurisdiction over "[f]inal decisions of district courts").

Notice of appeal was filed October 12, 2022. Joint Appendix, page 1, Volume I, hereinafter "Appx0001". This appeal is from the final judgment entered by the U.S. District Court for the Eastern District of Pennsylvania, Surrick, J., on September 29, 2022. Appx0002-0008.

## Statement of the Issues and Standards of Review

1. Did the district court err in denying defendant's motion to dismiss pursuant to federal Rule of Criminal Procedure 12 (b)(3) counts One and Two of the Indictment charging sex trafficking of a minor for failure to state an offense? That is because the facts presented by the government in the defendant's case, as applied, make out a wholly domestic offense that congress never intended to address when it enacted 18 U.S.C. § 1591 and is unconstitutional as applied to the defendant.

2. Did the district court err in denying defendant's motion to withdraw his guilty plea because the government breached the plea agreement by including unconstitutional terms in the agreement?

## Procedural history of *Issue One and Two*:

Defendant's Motion to dismiss counts one and two was filed on November 19, 2020. SAppx0055-0068. The Government filed its response to defendants' motion to dismiss counts one and two on November 27, 2020. SAppx0069-0073. Defendant filed a reply to the government's response to defendants' motion to dismiss on March 7, 2021. SAppx0074-0177. The district court's order and opinion denying the motion to dismiss counts one and two was entered on November 9, 2021. Appx0009-0010. On November 16, 2021, the defendant entered a conditional plea, which preserved his right to appeal from the denial of his motion to dismiss counts one and two. SAppx0233-0244.

Defendant filed a Pro Se motion to withdraw his guilty plea on December 23, 2021. SAppx0178-0197. The government filed its response in opposition to the pro se motion to withdraw his guilty plea by the defendant on March 3, 2022.

2

SAppx0198-0211 Defense counsel filed a reply to the government's response in opposition to the motion to withdraw guilty plea on April 4, 2022. SAppx0212-0216 The government filed a surreply to defendants reply to the motion to withdraw on April 9, 2022. SAppx0217-0223 The defendant filed a response to the government's surreply to the defendant's motion to withdraw guilty plea on May 16, 2022. SAppx0224-1232 The district court's memorandum and order denying the defendants pro se motion to withdraw his guilty plea was entered on July 8, 2022.  Appx0011-0023. The defendant filed a pro se motion to reconsider the order denying the motion to withdraw on July 27, 2022. SAppx0250-0260 The defendant filed a motion for reconsideration and clarification on September 2, 2022. SAppx0261-0270 On September 15, 2022, the district court denied both pro se requests to reconsider the order denying the request of the defendant to withdraw his guilty plea. Appx0025-0026

### Standards of Review

When reviewing a district court's denial of a motion to dismiss the Indictment for lack of a subject matter jurisdiction because it is unconstitutional, the matter is subject to "de novo" review.  *De Leon-Reynoso v. Ashcroft,* 293 F.3d 633, 635 (3d Cir. 2002).  Whether the government breached the plea agreement is a question of law subject to plenary review. *United States v. Rivera,* 357 F.3d 290, 293-294 (3d Cir. 2004).

3

## Statement of Related Cases and Proceedings

Defendant has filed a writ of mandamus docketed in the United States Court of Appeals for The Third Circuit at 23-1070. This matter relates to sentencing restitution matters. Undersigned counsel is unaware of any other case or proceeding which is in any way related, completed, pending, or about to be presented before this Court, or any other court or agency, state or federal.

Statement of the Case

1.    *Factual background*

On November 15, 2018, a grand jury in the Eastern District of Pennsylvania returned a two-count Indictment charging Victor Clayton with sex trafficking of a minor and attempt, in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(a) [Counts 1 and 2]. SAppx0051-0054 On November 16, 2021, the defendant appeared before the Honorable R. Barclay Surrick and pleaded guilty to Counts 1 and 2 of the Indictment. The plea was entered pursuant to Federal rule of Criminal Procedure 11(c)(1)(C), with an agreed upon sentence range of 180 months to be followed by ten years of supervised release. SAppx0233-0244

Count One charges that on or about February 1, 2018 and on or about March 15, 2018, in Philadelphia in the Eastern District of Pennsylvania, the Eastern District of North Carolina, and elsewhere, Victor Clayton in and affecting interstate commerce knowingly recruited, enticed, harbored, transported, provided, obtained, and maintained Minor 1, whose identity is known to the Grand Jury, and attempted to do so, knowing and in reckless disregard of the fact that Minor 1 was under the age of 18 and would be caused to engage in a commercial sex act, and having had the  reasonable opportunity to observe Minor 1. Count Two alleges the same acts with regard to Minor 2, between on or about March 12, 2018, and on or about March 15, 2018. SAppx0233-0244 The defendant is appealing the district

court's order and opinion denying the motion to dismiss counts one and two that was entered on November 9, 2021.  Appx 0009-0010

 2.  *Factual overview of issue one*

The defendant at his plea hearing acknowledges that the Government would prove that between on or about February 1, 2018, and on or about March 15, 2018, the defendant recruited, enticed, harbored, transported, provided, obtained, and maintained minor one, in or affecting interstate commerce, knowing or recklessly disregarding the fact that she had not attained the age of 18 and would be caused to engage in a commercial sex act, and had the reasonable opportunity to observe her SAppx0271-0293

The defendant at his plea acknowledged that the Government would prove that he was involved in posting Backpage advertisements for minor one, including taking 23 photographs of her for advertisements; that he transported her, including in interstate commerce; that he harbored her and  maintained her at various hotels in Philadelphia, including the Days Inn, the Motel 6, the Hub Motor Lodge, and the North American Motor Inn, including paying for those hotels in cash knowing that she would be caused to engage in commercial sex acts. SAppx0271-0293

The defendant agreed that the Government would also prove that between on or about March 12, 2018, and on or about March 15, 2018, the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or

maintained minor two, in and affecting interstate commerce; knowing or recklessly disregarding the fact that she had not attained the age of 18 and would be caused to engage in a commercial sex act; and that he had the reasonable opportunity to observe her and that he attempted to do so. SAppx0271-0293

The defendant agreed that as to minor two the government would prove that on or about March 12, 2018, along with minor one, he drove in a rented vehicle to upper Chichester, Pennsylvania where he picked up minor two, and he and minor one discussed Backpage advertisements with minor two, and discussed with her engaging in commercial sex acts, and how she would be part of the team. The defendant brought both of those minors to sleep overnight at his mother's house in Philadelphia. Then on approximately March 13, 2018, he drove both minors to North Carolina; minor one being age 16, minor two being age 15. The defendant then rented a room at the Baymont Inn and Suites in Dunn, North Carolina, in cash, knowing that both minors would be caused to engage in commercial sex acts. SAppx0271-0293

Defendant's aforementioned conduct was entirely domestic and had no transnational component. The defendant asserts that Congress does not have the power, nor did it intend in its enactment of Title 18 U.S.C §1591(a)(1) to infringe on wholly domestic criminal activity as born out by the facts in this case.

7

3.    *Factual overview of issue two*

On November 16, 2021, the defendant entered a conditional plea, which preserved his right to appeal from the denial of his motion to dismiss counts one and two of the Indictment.  Among other provisions, the guilty plea contained the following language:

> The defendant further understands that supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by up to five years per count of conviction. Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release. If the defendant violates supervised release by committing one or more specified child exploitation offenses, the court will revoke supervised release and require the defendant to serve an additional term of imprisonment of at least 5 years pursuant to 18 U.S.C. § 3583(k). SAppx0233-0244

18 U.S.C. 3583 (k) was struck down by the Supreme Court on June 26, 2019, in the *United States v.  Hammond*, 139 S. Ct. 2369; 204 L.Ed.2d897(2019) and should not have been included in the defendant's plea agreement. The defendant asserts that the district court, the government, and even defense counsel advised the defendant that he was subjected to 18 U.S.C. § 3583 (k), which mandates a mandatory minimum sentence of (5) five years, if the defendant violates supervised release, per count. This material mistake constituted a breach of the defendant's plea agreement, and he should be permitted to withdraw his plea.

8

<u>Argument One</u>

The district court erred in denying defendant's motion to dismiss pursuant to federal Rule of Criminal Procedure 12 (b)(3) counts One and Two of the Indictment charging sex trafficking of a minor for failure to state an offense. That is because the facts presented by the government in the defendant's case, make out a wholly domestic offense, that congress never intended to address when it enacted 18 U.S.C. § 1591(a)(1) and is unconstitutional as applied to the defendant.

## **DISCUSSION**

## I.  **THE COURT ERRED IN DENYING DEFENDANTS MOTION TO DISMISS COUNTS ONE AND TWO CHARGING 18 U.S.C. § 1591**.

The crux of defendant's appeal is that both counts of his Indictment are unconstitutional as applied to him. The defendant asserts that Congress does not have the power, nor did it intend in its enactment of Title 18 U.S.C §1591(a)(1) to infringe on wholly domestic criminal activity. To do so would be in violation of the Tenth Amendment, The Treaty Power and the Necessary and Proper Clause of the United States Constitution.

The Tenth Amendment provides in full: "The powers not delegated to the United States by the Constitution, nor prohibited by it to any States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The Treaty Power

9

permits the President, "by and with the advice of the Senate to make treaties, provided two thirds of the Senators present concur…" *Id* at art. II, § 2, cl 2. It is the Necessary and Proper Clause that gives Congress the Power "[t]o make all laws which shall be necessary and proper for carrying into Execution the forgoing powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." Id at art I, § 8, cl. 18.

To enact a piece of legislation, the government must be able to point to an enumerated power in the Constitution that authorizes congress to enact it.  It is beyond doubt that "lacking police power", congress cannot punish felonies generally.  For example, a criminal act committed wholly within a state cannot be made an offense against the United States, unless it has some relation to the execution of a power of Congress, or some matter within the Jurisdiction of the United States. See Bond v United States 572 U.S. 134 S. Ct. 2077, 2086 (2014) (quoting Cohen v. Virginia 19 U.S. 264, 428 (1821)).

The question presented here is not whether Congress has the authority under the Necessary and Proper Clause to make laws, but whether Congress has the authority under the Necessary and Proper Clause to expand the scope of a treaty intentionally or as applied.  The Necessary and Proper Clause is the Source of Congress' power to enact implementing legislation as it relates to a self-executing treaty generally, and its outer bounds limit Congress' authority to pass such

legislation. The Necessary and Proper Clause allows Congress to construct laws that are rationally related to the implementation of another constitutionally enumerated power, including the Presidents' power to make and execute treaties. See *United States v. Comstock* 560 U.S. 126, 134, 130 S. Ct. 1949 (2010) (citing Sabri v. United Sates 541 U.S. 600, 605 124 S. Ct. 1941 (2004) A statute is necessary to the implementation of a treaty if it is plainly adapted to the treaty, and the statute is a proper means of doing so if it is both not prohibited by the Constitution and consistent with the letter and spirit of the Constitution.

On October 28, 2000, Congress enacted the Victims of Trafficking and Violence Protection Act of 2000 ("TVPA"). Pub. L. 106-386, 114 Stat. 1464 (2000). Division A of this Act was known as the Trafficking Victims Protection Act ("TVPA"). The TVPA implements the United Nations Protocol to Prevent, Suppress and Punish Trafficking in persons. ("UNTOC"). The United States has adopted the Protocols as a signatory State pursuant to the presidents Treaty Power. Among its many provisions, the TVPA created criminal penalties for sex trafficking of children or by force, fraud, or coercion. Pub. L. 106-386, § 112(a), *codified at* 18 U.S.C. § 1591 (2000).

The TVPA sought to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." 22

11

U.S.C. § 7101(a). In support of the TVPA, Congress made a number of findings

relating to the "modern form of slavery" of trafficking in persons. *Id*. § 7101(b).

The "Purposes and Findings" section of the TVPA, includes, among other things,

references to the "international sex trade," 22 U.S.C. § 7101(b)(2), a "growing

transnational crime," § 7101(b)(3), the transportation of victims "from their home

communities to unfamiliar destinations, including foreign countries … ," §

7101(b)(5), "organized criminal enterprises worldwide," § 7101(b)(8), that

"[t]rafficking in persons is a transnational crime," § 7101(b)(24), and numerous

references to the victims of trafficking often being immigrants illegally brought to

the country where they are exploited, §§ 7101(b)(5), (17), (20). The reason for

these transnational references is because the TVPA is the implementing legislation

Necessary and Proper to implement the UNTOC agreement.

The legislative record around the original bill provides important insight.

The record of the original passage of the TVPA makes a myriad of references to

trafficking across international borders, but none to domestic or purely local

conduct. The House Judiciary's report on the bill showed measured constraint,

viewing congress's jurisdiction over the bill as limited to the immigration

provisions and the criminal penalty provisions. H.R. Rep. 106-487, pt. II, at 17

(Apr. 13, 2000).

Senator Brownback of Kansas, who assisted in developing the TVPA, made it clear that the bill addressed the evils of international sex trafficking. 146 Cong. Rec. S10,164-67 (Oct. 11, 2000) (statements of Sen. Brownback). Senator Brownback began his statement by invoking the story of Irina, who answered a "vague ad" in a Ukrainian newspaper and traveled to Israel to make money stripping. Instead, she was driven to a brothel, her passport was burned, she was designated as "property," and she was threatened with arrest and deportation. *Id*. The victims of sex trafficking "are enslaved into a devastating brutality against their will, with no hope for release or justice." *Id*. Senator Wellstone emphasized similarly egregious accounts of coercion and violence. *Id*. at S10,168.

The international focus of the law is further reflected in the original Act's structure, where eight out of thirteen sections were expressly focused on combatting international trafficking. 114 Stat. 1464, Pub. L. 106-386, §§ 104-111 (Oct. 28, 2000).  All of this is strong evidence that Congress did not intend to regulate purely domestic conduct and instead desired to leave such regulation for the states.

Congress does not exercise a general "police power;" that belongs to the States. *Bond v. United States*, 572 U.S. 844 (2014). In *Bond*, a jilted wife engaged in an "amateur attempt" to injure her husband's lover by spreading toxic chemicals on the lover's car, mailbox, and doorknob. *Bond* at 851. The victim sustained only

minor chemical burns. *Id*. Nevertheless, the federal government charged the defendant with possessing and using a chemical weapon, in violation of 18 U.S.C. § 229(a). 18 U.S.C. § 229(a) is implementing legislation of an international treaty regarding the proliferation of chemical weapons.

The Court reversed the conviction, relying on principles of federalism "inherent in our constitutional structure." *Id*. at 856 (majority opinion). Though the government's applicability of the facts to the law was simple (and matched Justice Scalia's commonsense view), the Court rejected that interpretation because it threatened to "dramatically intrude upon traditional state criminal jurisdiction," and the Court avoids reading statutes in such a way in the absence of a "clear indication" that they do. *Id*. The background principle the Court relied upon was "grounded in the relationship between the Federal Government and the States under our Constitution." *Id*.

The Supreme Court has interpreted the Necessary and Proper Clause to permit Congress to implement an existing, non-self-executing treaty, as negotiated by the President. U.S. Const. Art. III. §2, cl. 2. It would violate the structure and spirit of the Constitution for Congress to pass implementation legislation that causes a treaty to take on a shape that contradicts the Constitution, either by causing the treaty to reach a topic on which the President himself could not have negotiated or by allowing Congress to reserve for itself power to expand the

14

treaty's scope beyond what the President negotiated on the country's behalf as a signatory.

The Supreme Court has intimated that the Treaty Power reaches only "proper subjects of negotiation between our government and other nations". See *Asakura v. City of Seattle*, 265  U.S. 332, 341, 44 S. Ct. 515, 68 L. Ed. 1041 (1924); see Bond, 134 S. Ct. 2077 at 2102-11 (Thomas, J., concurring)(joined by Justices Scalia and Alito); In re Ross, 140 U.S. 453, 463, 11 S. Ct. 897, 35 L. Ed. 581 (1891); Geofroy v. Riggs, 133 U.S. 258, 266, 10 S. Ct. 295, 33 L. Ed. 642 (1890).  In particular, no court has ever said that The Treaty Power can be exercised without limit to affect matters which are a purely domestic concern and do not pertain to our relations with other nations.

Under Rule 12 of the Federal Rules of Criminal Procedure, the defendant in a criminal matter may Challenge his or her Indictment at any point prior to trial. See Fed. R. Crim P. 12(b)(3).  Victor Clayton did so in his case. To Succeed on an as applied challenge, the defendant need only show that the [Statute] is "an unconstitutional exercise of congressional power" as applied to the conduct set forth in the indictment. See *United States v Sullivan*, 451 F 3d. 884, 887, 371 U.S. App. D.C. 3639 (DC Cir. 2006).

Federal courts should decline to read federal law as intruding upon the responsibility for states to regulate local criminal activity, "unless Congress has

clearly indicated that the law should have such reach." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991).  "To interpret the Treaty Power as extending to every conceivable domestic subject matter-even matters without any nexus to foreign relations-would destroy the basic constitutional distinction between domestic and foreign powers." see Bond, 134 S. Ct. 2077 at 2104 (Thomas, J., concurring) (joined by Justices Scalia and Alito) (Citing United States v. Curtiss-Wright Export Corp 229 U.S. 304, 319, 57 S. Ct. 216, 81 L. Ed 255 (1936).

In order to stem the tide of federalization of local crime, 18 U.S.C. § 1591 must be construed narrowly with an eye to the concerns of international sex trafficking by violence and subjugation that led to its enactment as necessary and proper. The rule enunciated by the Supreme Court in *Bond* mandates that courts should construe federal criminal statutes that infringe upon a traditional area of state authority narrowly. Accordingly, Counts One and Two of the Indictment against Victor must be dismissed pursuant to Fed. R. Crim P. 12(b)(3) as unconstitutional as applied.

Argument Two

The district court erred in denying the defendant's
motion to withdraw his guilty plea because the
government breached the plea agreement by including
unconstitutional terms in the agreement.

The defendant asserts that the district court and the government, erroneously

advised the defendant that he was subjected to 18 U.S.C. § 3583 (k), which

mandates a mandatory minimum sentence of (5) five years, if the defendant

violates supervised release, per count. However, this provision in the plea

agreement is unconstitutional as 18 U.S.C. 3583 (k) was struck down by the

Supreme Court on June 26, 2019, in the *United States v. Hammond*, 139 S. Ct.

2369; 204 L.Ed.2d897(2019).  Because the defendant was misled and misinformed

regarding this sentencing provision in the plea agreement, the defendant did not

enter into the plea knowingly, intelligently, and voluntarily. The government

induced the defendant's plea by including unconstitutional terms in its plea

negotiations. Because the government knowingly or negligently included these

invalid terms the plea agreement has been breached.

At the outset the defendant notes that although he signed an appellate

waiver, an appellate waiver is not enforceable if the government breaches its own

obligations under the plea agreement. See *United States v. Moscahlaidis*, 868 F. 2d

1357, 1360 (3d Cir. 1989).  What renders the plea null, and void is found in

17

paragraph five of the plea agreement, which provides that the defendant is

subjected to 18 USC 3583(k), mandatory five-year sentence for certain violations

while on supervised release. SAppx0233-0244 This sentencing provision, as

conceded by the government and the district court, is unenforceable and has been

struck down as unconstitutional by the Supreme Court. However, the district court

also alluded to this provision during the Rule 11 plea colloquy. Appx 0276 This

term is a breach of the plea agreement.

The Supreme Court in *Santobello v New York* 404 U.S. 257, (1971),

established that when a plea rests in any significant degree on a promise or

agreement of the prosecutor so that it can be said to be part of the inducement or

consideration, such promise must be fulfilled. Id at 262.  *Santobello,* focused on

the duties of the prosecutor in relation to promises made in plea negotiations. The

plea agreement in and of itself is part of the inducement.  The fact that the error is

possibly harmless or inadvertent does not obviate the need for appropriate relief. A

plea induced by an unfulfillable promise is no less subject to challenge than one

induced by a valid promise which the government simply fails to fulfill. See *Brady

v. United States* 397 U.S. 742, 755 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970).

Plea agreements are contractual and therefore analyzed under Contract Law

Standards. See *Unites States v. Moscahlaids*, 868 F.2d 1357, 1361 (3d Cir. 1989)

"In determining whether a plea agreement has been broken courts look to what was

reasonably understood by [the defendant] when he entered his plea of guilty".

*United States v. Crusco*, 536 F.2d 21, 27 (3d Cir.1976). Plea agreements are

mutually agreed upon understandings between the parties or a quid pro quo. See

*United States v. Partida-Parra*, 859 F2.d 629, 633 (9th Cir.1988). Where the plea is

the product of a "material misrepresentation" relied on by the defendant the error

cannot be harmless. ("Error, plain on the face of the record"…) Boykin v.

Alabama, 395 US 238, 242, 89 S. Ct. 1709, 23 L. Ed 2d 274 (1969).  A plea of

guilty under the influence of unintentionally erroneous advice by the government

agent… [the prosecutor, court, and attorney's].. cannot be regarded as having been

made on the necessary basis of informed, self-determined choice. See *Von Moltke*

*v. Gillies* (1948) 332 US 708, 92 L. Ed 309, 68 S. Ct. 316 concurring opinion of

Justice Frankfurter and Justice Jackson.

When the court has determined that a material aspect of the plea agreement

is invalid, the proper remedy is to allow the defendant to withdraw the guilty plea

and either negotiate a new "agreement" or proceed to trial.  United States v.

Fotiades-Alexander, 331 F. Supp 2d 350 (E.D.Pa.2004) ("It is well-settled that

supervised release constitutes punishment) See *United States v. Gilchrist*, (1997)

130 F. 3d 1131 (relying on *United States V. Dozier*, 119 F.3d 239, 1997 WL

401318 (3d Cir. (N.J.)).

19

The government argues that the defendant should be tethered to the plea agreement regardless of the "error" in the "Plea Agreement" sentencing penalty provision, which the government concedes is unconstitutional and invalid. In general terms of the plea agreement are "contractual in nature". "[P]lea agreements… are unique contracts in which special Due Process concerns for fairness and adequacy of procedural safeguards obtain", United States v. Carnine, 974 F. 2d 924, 928 (7th Cir. 1992). Thus, courts construe plea agreements strictly against the government. This is done for a variety of reasons, including the fact that the government is usually the party that drafts the agreement, and the fact that the government ordinarily has certain awesome advantages in bargaining power". *United States v. Mergen*, 764 F.3d 199, 208 (2d Cir.2014) (quoting *United States v. Ready*, 82 F.3d 551, 559 (2d Ciur. 1996), superseded on other grounds as stated in *United States v. Cook*, 722 F. 3d 477, 481 (2d Cir. 2013). For these reasons, courts should hold the government to a "greater degree of responsibility than the defendant… for imprecisions or ambiguities in … plea agreements". *United States v. Wells*, 211 F. 3d 988, 955 (6th Cir. 2000).

The government argues that the error is harmless and not prejudicial to the defendant. The government is wrong. Due process of Law is absolute. See *Carey v. Piphus*, 98 S. Ct. 1042, 55 L. Ed 2d 252,435 45 247 (1978). The government's position is that the defendant should not be afforded the opportunity to object to an

unconstitutional sentencing provision in the plea agreement which in any event is unenforceable, rendering it completely impotent and non-prejudicial.

The fact of whether the provision is enforceable or not is beside the point. What matters is what rights would have been readily available to the defendant at the time of the entry of his plea. Particularly, when the sentencing provision had been invalidated by the Supreme Court two years prior to the defendant's plea. Moreover, the knowledge of these potentially onerous supervised release consequences may have plaid a role in accepting the plea with more favorable sentencing terms. "If a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of Due Process and therefore, is void". *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct 1166 22 L. Ed 2d 418 (1969).

In the situation before us, the defendant would have had the right under Due Process of Law to make an informed, intelligent, and knowing decision as to what rights were available to him moving forward in the proceedings. The government's position would affectively strip away those rights and constitutional protections and safeguards because of an error made on the part of the government who had a legal obligation to know what the law was. A matter affecting substantial rights means "error" with a prejudicial effect on the outcome of a judicial proceeding. Had the court been aware of the sentencing error at the time of the plea entry, there

can be no dispute that the court under its authority and duty would have addressed the error and the outcome of the proceedings would have had a different result. Moreover, because of the defendant's mistrust of the government, as indicated in his desire to go to trial, such an error on the government's part would have given the defendant pause not to move forward with a plea. Denial of Due Process of Law "procedural or substantive, violates the Due Process Clause and amounts to a miscarriage of justice.

The court cannot "reject" certain provisions of the plea agreement and still accept the plea agreement. See, *United States v. Yednak*, 187 F.Supp.2d 419 (3d Cir. 2002) (holding the court may only accept or reject the plea agreement in its entirety. It does not have the authority simply to reject those portions of the agreement with which it finds fault. See *United States v. Mukai*, 26 F. 3d 953, 956 (9th Cir.1994)(starting that "if the court did not find the terms of [one paragraph of the plea agreement] appropriate, its only option was to reject the agreement in its entirety")' *United States v. Cunavelis*, 969 F.2d 1419, 1422 (2d Cir. 1992)("The district court may accept or reject a []… plea [agreement], but may not modify it."). see e.g., *United States v. Self*, 596 F.3d 245, 249 (5th Cir. 2010) (holding that the courts rejection of the stipulated sentence in the plea agreement constituted a rejection of the entire plea agreement); See also *In Re Morgan*, 506 F.3d 705, 709, (9th Cir. 2007) (noting that the court cannot accept a plea agreement on a piecemeal

basis). In this case the court has no choice but to reject the plea agreement and remand the case for further proceedings.

A guilty plea induced by misrepresentation including unfulfillable or unfulfilled promises cannot stand and is contractually in breach. If the provisions of a plea agreement are accepted by a court, but later found to be invalid, the proper remedy is not to impose a sentence that modifies or violates the plea agreement. The remedy is to allow the defendant to withdraw his guilty plea and either negotiate a new plea agreement or proceed to trial. See *United States v. Bernard*, 373 F.3d. 339, 345, 46 V.I. 657 (3d Cir. 2004).

The government negotiated a plea with onerous terms that had long been invalidated. These terms were surely a safety net for future harsh punishment should the defendant violate his supervised release. The government negotiated a plea that on its face was generous by offering a well below guidelines sentencing carrot at the front end with a significant five-year mandatory sentence supervised release violation stick. The defendant entered into a plea agreement contract with terms that were wholly unconstitutional. The remedy is to remand the defendant's case and permitting him to withdraw his guilty plea and either negotiate a new plea agreement or proceed to trial.

23

<u>Conclusion</u>

WHEREFORE, it is requested that the judgment of conviction be reversed, and that the case be remanded to the district court with instructions to issue an order dismissing counts one and two of the Indictment as unconstitutional.  In the alternative, because the defendant's plea agreement has been breached the defendant should be permitted to withdraw his plea of guilty.

Respectfully submitted,

Date: <u>March 30, 2023</u>

<u>/s/ Luis A. Ortiz</u>
LUIS A. ORTIZ, ESQUIRE
121 South Broad Street, 18th Floor
Philadelphia, Pennsylvania 19107
(215) 858-3787
luisaortiz@comcast.net
Attorney for Appellant,
Victor Clayton

24

<u>Certifications of Counsel</u>

I, Luis A Ortiz, Esquire, hereby certify as follows:

1. I am a member of the Bar of this Court.

2. Using FedEx 2-Day Delivery, I have this day served an original and Seven copies of the Brief of Appellant and Joint Appendix Volume I upon Patricia S. Dodszuweit, Clerk of the United States Court of Appeals for the Third Circuit, 21400 United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania, 19106-1790.

3. Using First Class United States Mail, I have this day served a copy of the Brief of Appellant and Joint Appendix Volume I upon Amanda R. Reinitz. Esquire, Office of the United States Attorney, 615 Chestnut Street Suite 1250 Philadelphia, PA 19106.

4. I have this day filed with the Court an electronic copy of the Brief of Appellant and Joint Appendix Volume I.

5. The electronic filing is identical to the paper filing.

6. This brief contains a total of 6181 words; and

7. Using my computer's McAfee Security Scan Plus, anti-virus software, I checked the electronic Brief of Appellant and Joint Appendix Volume I for viruses, and no viruses were detected.


Date: <u>March 30, 2023</u>          */s/ Luis A. Ortiz*
                                LUIS A. ORTIZ, ESQUIRE
                                Attorney for Appellant,
                                Victor Clayton

# Table of Contents

Page

Volume I

Notice of Appeal ........................................................................Appx0001

Judgement in a Criminal Case .................................................Appx0002

Order denying Motion to Dismiss Counts One and Two .........................Appx0009

Memorandum Denying Motion to Withdraw Guilty Plea.........................Appx0011

Order denying Reconsideration of motion to withdraw Plea ..................Appx0025

Volume II

District Court Docket Entries................................................. SAppx0027

Indictment Filed November 15 2018 ....................................... SAppx0051

Motion to Dismiss Counts One and Two................................... SAppx0055

Government's Response to Motion to Dismiss Counts One and Two..... SAppx0068

Defenndant's Reply and Supplemental Motion to Dismiss Counts One and Two of

the Indictment ........................................................... SAppx0074

Defendant's pro Se Motion to Withdraw the Guilty Plea ........................ SAppx0178

Government's Response in Opposiyion to Defendants pro se Motion to Withdraw

the Guilty Plea........................................................... SAppx0198

Defendant's pro Se Reply to the Governments Opposition ro Withdraw the Guilty

Plea................................................................... SAppx0212

Governments Surreply to the Defendant's Pro Se Motion to Withdraw the Guilty

Plea................................................................... SAppx0178

Defendant's Reply to Goverments Surreply to Pro Se Motion to Withdraw the

Guilty Plea................................................................................ SAppx0224

Guilty Plea Agreement............................................................ SAppx0233

Defendant's Motion to proceed Pro Se ................................... SAppx0245

Court Order Granting Government Leave to file Surreply..................... SAppx0249

Defendant's pro se Motion to Reconsider Motion to Withdraw the Guilty Plea and

Request for and Evidentiary Hearing....................................... SAppx0250

Defendant's pro se Motion for Reconsideration and Clarifictation ......... SAppx0261

Transcript of ther Plea Hearing................................................ SAppx0271

Transcript of the Sentencing Hearing ..................................... SAppx294

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,　　　　：
　　　　　　　　　　　　　　　　　：
　　　　　Plaintiff,　　　　　　　　：
　　　　　　　　　　　　　　　　　：
　　　v.　　　　　　　　　　　　　：　　Criminal Action No. 18-524-1
VICTOR CLAYTON,　　　　　　　　　：
　　　　　　　　　　　　　　　　　：
　　　　　Defendant.　　　　　　　：

## **NOTICE OF APPEAL**

Notice is hereby given that Victor Clayton, Defendant, by and through his undersigned

attorney, Luis A. Ortiz Esq., hereby appeals to the United States Court of Appeals for the Third

Circuit, from the Judgement entered by The Honorable R. Barclay Surrick on September 29, 2022,

in the United States District Court for the Eastern District of Pennsylvania.

Dated: October 12, 2022　　　　　　　　 */s/ Luis A. Ortiz*　　　　　　　
　　　　　　　　　　　　　　　　　　LUIS A. ORTIZ, ESQUIRE
　　　　　　　　　　　　　　　　　　121 South Broad Street, 18th Floor
　　　　　　　　　　　　　　　　　　Philadelphia, PA  19107
　　　　　　　　　　　　　　　　　　215-858-3787
　　　　　　　　　　　　　　　　　　Email: luisaortiz@comcast.net

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
### Eastern District of Pennsylvania

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) |
| VICTOR CLAYTON<br>*also known as*<br>MANNY | ) Case Number:  DPAE2:18CR000524-001 |
| | ) USM Number:  71803-066 |
| | ) Luis A. Ortiz, Esquire and Caroline A. Goldner Cinquanto, Esquire |
| | ) Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    1 and 2 of the Indictment

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☐ was found guilty on count(s) _____
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1591(a)(1) and 1594(a) | Attempted Sex Trafficking of a Minor | 3/15/2018 | 1 |
| 18 U.S.C. §§ 1591(a)(1) and 1594(a) | Attempted Sex Trafficking of a Minor | 3/15/2018 | 2 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

9/28/2022
Date of Imposition of Judgment

Signature of Judge

R. Barclay Surrick, USDJ
Name and Title of Judge

9/29/2022
Date

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __2__ of __7__

DEFENDANT:   VICTOR CLAYTON
CASE NUMBER:   DPAE2:18CR000524-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
180 months on each of Counts 1 and 2 of the Indictment, to run concurrently

☐  The court makes the following recommendations to the Bureau of Prisons:

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____  ☐  a.m.   ☐  p.m.   on _____.

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on _____.

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___7___

DEFENDANT:  VICTOR CLAYTON
CASE NUMBER:  DPAE2:18CR000524-001

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

10 years on each of Counts 1 and 2 of the Indictment, to run concurrently

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☑ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

Appx0004

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 3A — Supervised Release

|  | Judgment---Page | 4 | of | 7 |
|---|---|---|---|---|

DEFENDANT: VICTOR CLAYTON
CASE NUMBER: DPAE2:18CR000524-001

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3B — Supervised Release

Judgment—Page __5__ of __7__

DEFENDANT: VICTOR CLAYTON
CASE NUMBER: DPAE2:18CR000524-001

## ADDITIONAL SUPERVISED RELEASE TERMS

Within 72 hours after his release from custody, the defendant shall report to the probation office in the district to which the defendant is released.

While on supervised release, the defendant shall be prohibited from possessing any firearms or other dangerous device, and he shall not possess an illegal controlled substances.

The defendant shall submit to an initial inspection by the U.S. Probation Office and to any examinations during supervision of the defendant's computer and any devices, programs, or application. The defendant shall abide by the standard conditions of computer monitoring and filtering that will be approved by this Court.

The defendant shall report to the U.S. Probation Office any regular contact with children of either sex under the age of 18. The defendant shall not obtain employment or perform volunteer work which includes regular contact with children under the age of 18.

The defendant shall participate in a sex offender program for evaluation and treatment and abide by the rules of any such program until satisfactorily discharged.

The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq) as directed by the probation officer.

The defendant shall provide the U.S. Probation Office with full disclosure of his financial information.

The defendant is prohibited from incurring any new credit charges or opening additional lines of credit without the approval of the probation office.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page  __6__  of  __7__

DEFENDANT: VICTOR CLAYTON
CASE NUMBER: DPAE2:18CR000524-001

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 200.00 | $ | $ | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $ _____ 0.00 | $ _____ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

DEFENDANT: VICTOR CLAYTON
CASE NUMBER: DPAE2:18CR000524-001

Judgment — Page  7  of  7

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A   ☑  Lump sum payment of $   200.00   due immediately, balance due

    ☐  not later than _____ , or
    ☐  in accordance with ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B   ☐  Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C   ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D   ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
    term of supervision; or

E   ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
    imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

| Case Number Defendant and Co-Defendant Names (including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 18-524 |
| VICTOR CLAYTON | : | |
| | : | |

### ORDER

**AND NOW**, this 9th day of November 2021, upon consideration of the Defendant Victor

Clayton's Motion to Dismiss Counts One and Two of the Indictment for Failure to State an

Offense (ECF Nos. 90), the Government's Response thereto (ECF No. 91), and Defendant's

Reply (ECF No. 95), it is **ORDERED** that the Motion is **DENIED**.[1]

**IT IS SO ORDERED.**

BY THE COURT:

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

---

[1] Defendant raises two arguments in support of his request to dismiss both Counts of the Indictment. First, he contends that the Indictment should be dismissed because the Trafficking Victims Protection Act ("TVPA") and more specifically, 18 U.S.C. § 1591 of the TVPA—the section under which he was charged—only criminalizes international sex trafficking and not interstate sex trafficking. Second, he contends that Congress lacked the authority to pass § 1591 of the TVPA.

With regard to Defendant's first argument that § 1591 only criminalizes international sex trafficking, the argument is directly contradicted by the statutory language. Section 1591(a) makes it a crime to "knowingly . . . *in or affecting interstate or foreign commerce* . . . recruit[], entice[], harbor[], transport[], provide[], obtain[], advertise[], maintain[], patronize[], or solicit[] by any means a person . . . knowing. . . that the person has not obtained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1529(a)(1) (emphasis added). The statute makes it explicit that sex trafficking affecting both interstate and foreign commerce are punishable. The intent to criminalize domestic sex trafficking is also reflected in the stated purpose of the TVPA, which is found at 22 USC § 7101. There, it states Congress's purposes

and findings of the TVPA, one such finding being that "[t]rafficking in persons substantially affects interstate and foreign commerce." 22 U.S.C. § 7101(b)(12). Moreover, the Third Circuit has on many occasions upheld convictions for sex trafficking under Section 1591 where the convicted conduct was purely domestic and not international. *See, e.g., United States v. Doe,* 785 F. App'x 57, 59 (3d Cir. 2019); *United States v. Senat,* 698 F. App'x 701, 703 (3d Cir. 2017).

Defendant's second argument—that Congress did not have the authority to pass § 1591 and regulate interstate sex trafficking—is also unavailing. Defendant contends that Congress lacked the power under the Constitution's Necessary and Proper Clause to expand the scope of an international treaty dealing with sex trafficking—the United Nations Convention Against Transnational Organized Crime and the Protocols. In particular, Defendant contends that the international treaty demands that state parties criminalize certain offenses that are transnational in nature, and that § 1591(a) goes well beyond this in punishing purely domestic conduct. Not surprisingly, Defendant has offered no cases to support his argument that § 1591(a) is unconstitutional. This is because Congress's authority to enact the TVPA does not derive from an international treaty, but instead from the Commerce Clause of the Constitution.

Under the Commerce Clause, Congress has the "power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Gonzales v. Raich,* 545 U.S. 1, 17 (2005). Congress has concluded that trafficking of persons "substantially affects interstate and foreign commerce." 22 U.S.C. § 7101(b)(12); *see also United States v. Evans,* 476 F.3d 1176, 1179 (11th Cir. 2007) ("Congress found that trafficking of persons has an aggregate economic impact on interstate and foreign commerce . . . and we cannot say that this finding is irrational.").

Every court that has considered whether the TVPA and specifically whether § 1591's prohibition of interstate (as opposed to international) trafficking is a valid exercise of Congress's authority under the Commerce Clause, has concluded that it is. *See, e.g., United States v. Walls,* 784 F.3d 543, 548-49 (9th Cir. 2015) (concluding that the Commerce Clause gave Congress authority to regulate human trafficking and enact the TVPA); *United States v. Evans,* 476 F.3d 1176, 1179 (11th Cir. 2007) (affirming constitutionality of § 1591 and the TVPA as applied to the defendant's human trafficking, which occurred solely in Florida); *United States v. Campbell,* 111 F. Supp. 3d 340, 346 (W.D.N.Y. 2015) (concluding that § 1591 was a valid exercise of the Congress's power under the Commerce Clause and that the defendant's conspiracy to commit sex trafficking, which occurred solely in New York, had a substantial impact on interstate commerce); *United States v. Paris,* No. 06-64, 2007 WL 3124724, at *8 (D. Conn. Oct. 24, 2007) (rejecting argument that Congress lacked power to regulate purely national sex trafficking).

Appx0010

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 18-524 |
| VICTOR CLAYTON | : | |

**MEMORANDUM**

**SURRICK, J.**                                                    **JULY 8, 2022**

Presently before the Court is Defendant Victor Clayton's *pro se* Motion to Withdraw the Guilty Plea Pursuant to Rule 11(d)(2)(B). (ECF No. 181.) For the following reasons, Defendant's Motion will be denied.

## I.      BACKGROUND

In February and March of 2018, Defendant sex trafficked Minor 1, aged 16, and Minor 2, aged 15. (Tr. of Guilty Plea Hr'g at 15, ECF No. 182.) Defendant took photos of Minor 1 that he posted in Backpage advertisements about her, and then transported her to various hotels around Philadelphia, knowing that she would be caused to engage in commercial sex acts. (*Id.* at 15-16.) On March 12, 2018, Defendant drove Minors 1 and 2 from Pennsylvania to North Carolina. Minor 1 spoke with Minor 2 about engaging in commercial sex acts and how Minor 2 would be part of the "team." (*Id.* at 16.) Defendant transported the minors to a room that he rented at the Baymont Inn and Suites in Dunn, North Carolina, knowing that both minors would be caused to engage in commercial sex acts there. (*Id.* at 17.)

On July 24, 2019, a grand jury returned a two-count Indictment charging Clayton with knowingly recruiting, enticing, harboring, transporting, providing, obtaining, and maintaining

Minor 1 and Minor 2, and attempting to do so, knowingly and in reckless disregard for the fact

that Minor 1 and Minor 2 were under the age of 18 and would be caused to engage in

commercial sex acts, in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(a).  (ECF No. 1.)

Throughout his pretrial proceedings and trial, Defendant repeatedly changed his mind

about whether he wanted counsel to represent him.  On May 22, 2019, Defendant filed a *pro se*

motion to remove his court-appointed attorney, Luis Ortiz, Esquire.  (ECF No. 21.)  On June 5,

2019, Defendant and counsel then jointly filed a motion to withdraw his motion to remove

counsel, (ECF No. 22), which the Court granted the following day.  (ECF No. 23.)  On July 19,

2019, Defendant filed a motion to proceed *pro se.*  (ECF No. 28.)  After a hearing and colloquy

on August 26, 2019, the Court granted Defendant's request to proceed *pro se* with Mr. Ortiz as

standby counsel.  Later that afternoon, the Government filed a Motion for Reconsideration,

requesting that the Court ask Defendant additional questions as part of his colloquy to determine

if his waiver of counsel was knowing and intelligent.  On October 14, 2019, Defendant filed a

motion to appoint Caroline Goldner Cinquanto, Esquire, in addition to standby counsel Mr.

Ortiz.  (ECF No. 43.)  Pursuant to Defendant's request and following a hearing on October 15,

2019, the Court appointed Ms. Cinquanto as standby counsel.  (ECF No. 44, 45.)  On March 10,

2021, Defendant requested that the Court remove standby counsel.  (ECF No. 96.)  Following

another hearing and colloquy on May 24, 2021, the Court directed both standby counsel to

continue to assist Defendant.  (ECF No. 104.)  On October 18, 2021, Defendant again requested

to remove standby counsel.  (ECF No. 130.)  At a status conference held on November 8, 2021,

one week before trial, Defendant withdrew his request to remove standby counsel.  (ECF No.

143.)  Defendant asserted that he wished to proceed to trial *pro se* with standby counsel.  (*Id.*)

At trial, on November 16, 2021, Defendant proceeded *pro se* and made an opening statement to which the Court sustained many appropriate objections. Shortly after, Defendant conferred with standby counsel and requested that the Court permit both Mr. Ortiz and Ms. Cinquanto to represent him. (11/16/21, Tr. Trans., 41, ECF No. 184.) After speaking with Defendant—who informed the Court that having counsel represent him would be in his best interest—the Court granted this request. (*Id.* at 41-42.) Defendant did not ask to proceed by way of hybrid representation. Following the testimony of two witnesses, the Court recessed. During the recess, counsel informed the Court that Defendant wished to enter a plea of guilty. Among other provisions, the guilty plea contained the following language about which Defendant now complains:

> The defendant further understands that supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by up to five years per count of conviction. Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release. *If the defendant violates supervised release by committing one or more specified child exploitation offenses, the court will revoke supervised release and require the defendant to serve an additional term of imprisonment of at least 5 years pursuant to 18 U.S.C. § 3583(k).*

(Plea Document, 3, ECF No. 177) (emphasis added). Following a thorough colloquy, Defendant entered a plea of guilty to two counts each of sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(a). The plea agreement stipulated that Defendant would be sentenced to, among other things, fifteen years in prison followed by ten years of supervised release. (*Id.* at 1.) The Court deferred acceptance of the plea until after review of the pre-sentence report and dismissed the jury.

Defendant filed the instant *pro se* Motion, requesting that we permit him to withdraw his guilty plea. This Motion will be denied.

Appx0013

## II.   LEGAL STANDARD

The decision to permit hybrid representation—where a defendant acts as co-counsel to his attorney—is entirely within a district court's discretion. *United States v. Moro*, 505 F. App'x 113, 115 (3d Cir. 2012). Courts have no obligation to consider a defendant's *pro se* filings when the defendant is represented by counsel. *See McKaskle v. Wiggins,* 465 U.S. 168, 183 (1984); *United States v. D'Amario*, 256 F. App'x 569, 571 (3d Cir. 2007). This is because "[a] defendant does not have a constitutional right to choreograph special appearances by counsel." *Id.*

"Once a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). If a defendant moves to withdraw his or her guilty plea before the Court imposes a sentence, the Court must permit withdrawal if the defendant shows a "fair and just reason." Fed. R. Crim. P. 11(d)(2)(B). When evaluating a defendant's motion to withdraw, courts consider: (1) whether the defendant asserts his or her innocence; (2) whether the withdrawal would prejudice the Government; and (3) the strength of the defendant's reason to withdraw the plea. *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001). "[A] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003).

## III.   DISCUSSION

Defendant asserts numerous errors, primarily errors of counsel, that he claims should allow him to withdraw his guilty plea. His request to withdraw his guilty plea will be denied. As an initial matter, the Court will deny Defendant's Motion because he has improperly

Appx0014

proceeded by way of hybrid representation. Even if Defendant had filed his Motion properly

through counsel, it would still be denied. Defendant's supposed factual assertion of innocence is

merely an irrelevant complaint about the quality of the testimony offered at the grand jury

proceedings, and his claim of legal innocence is based on a discredited theory that he repeatedly

raised throughout the pre-trial stage. Moreover, the Government would be prejudiced if the

Defendant were able to enter a plea of guilty mid-trial, when the Government was prepared to

present its case, and later change his mind. Finally, Defendant's various complaints about

counsel's performance are belied by the record. Because Defendant has not shown that there is

any fair and just reason to permit withdrawal of his guilty plea, his Motion will be denied.

**A.      Defendant may not file his Motion *pro se* because he is represented by
counsel.**

While "[a] defendant does not have a constitutional right to choreograph special

appearances by counsel," *McKaskle,* 465 U.S. at 183, the entirety of Defendant's pre-trial and

trial proceedings can be described as just that. During the pretrial stage, he repeatedly waffled

between proceeding *pro se* and being represented; at trial, he demanded to proceed *pro se*; after

his opening statement, he insisted on a special appearance by counsel to cross-examine two

witnesses and negotiate his guilty plea; he now files this motion *pro se*, asserting ineffective

assistance, despite being currently represented by counsel. Defendant's indecision has resulted

in numerous hearings, colloquies, and filings on the issue of his representation alone.

Defendant's plethora of meritless pre-trial motions consumed and wasted the Court's time. We

will not entertain yet another one of Defendant's meritless attempts to delay or distract from the

litigation at hand. Defendant's request to withdraw his plea will be denied because he is

attempting hybrid representation, and we have not granted him leave to do so.

**B.     Even if Defendant had properly filed his Motion, he would not be entitled to withdraw his guilty plea.**

*1.    Defendant failed to adequately assert his innocence.*

Defendant asserts that he is factually innocent because he claims that the testimony given at his grand jury hearing was weak. He also asserts that he is legally innocent because, according to him, the Trafficking Victims Protection Act (TVPA) exceeds Congress's constitutional powers and only criminalizes international sex trafficking, not interstate sex trafficking. Defendant is simply wrong.

In order to assert innocence for the purpose of withdrawing a guilty plea, a defendant's assertion must "be buttressed by facts in the record that support a claimed defense." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (internal citation omitted). "Bald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea." *Id.* In addition to factual innocence, legal innocence—which occurs when "the government would be unable to prove its case against [the defendant] beyond a reasonable doubt"—can also support a finding of innocence for the purpose of withdrawing a plea of guilty. *United States v. James*, 928 F.3d 247, 254 (3d Cir. 2019).

Defendant can make no showing of factual or legal innocence. Defendant's complaints about the strength of the Government's evidence presented to the grand jury do not amount to factual innocence. The evidence that the Government proffered during his guilty plea colloquy, as summarized in Section I, is more than sufficient to convict him of these charges. And Defendant admitted that all of those facts were true. (Tr. of Guilty Plea Hr'g, 18.) Defendant's opinion about the quality of testimony offered at the grand jury hearing is irrelevant to his guilt or innocence. Defendant has made no more than a bald claim of innocence. Obviously, that is insufficient. *Jones*, 336 F.3d at 252.

6

Moreover, Defendant's claim of legal innocence regarding the TVPA is wrong.
Defendant asserted throughout the pretrial proceedings and even up until the day of trial that he
could not be charged with sex trafficking because he alleged that that Congress lacked the
authority to pass the TVPA and the TVPA only criminalizes international sex trafficking, not
interstate sex trafficking. This Court rejected these baseless claims numerous times and issued
an order detailing its rejection of his claims, reasoning:

> With regard to Defendant's first argument that § 1591 only criminalizes
> international sex trafficking, the argument is directly contradicted by the statutory
> language. Section 1591(a) makes it a crime to "knowingly . . . *in or affecting
> interstate or foreign commerce* . . . recruit[], entice[], harbor[], transport[],
> provide[], obtain[], advertise[], maintain[], patronize[], or solicit[] by any means a
> person . . . knowing. . . that the person has not obtained the age of 18 years and will
> be caused to engage in a commercial sex act." 18 U.S.C. § 1529(a)(1) (emphasis
> added). The statute makes it explicit that sex trafficking affecting both interstate
> and foreign commerce are punishable. The intent to criminalize domestic sex
> trafficking is also reflected in the stated purpose of the TVPA, which is found at 22
> USC § 7101. There, it states Congress's purposes and findings of the TVPA, one
> such finding being that "[t]rafficking in persons substantially affects interstate and
> foreign commerce." 22 U.S.C. § 7101(b)(12). Moreover, the Third Circuit has on
> many occasions upheld convictions for sex trafficking under Section 1591 where
> the convicted conduct was purely domestic and not international. *See, e.g., United
> States v. Doe*, 785 F. App'x 57, 59 (3d Cir. 2019); *United States v. Senat*, 698 F.
> App'x 701, 703 (3d Cir. 2017).
>
> Defendant's second argument—that Congress did not have the authority to pass
> § 1591 and regulate interstate sex trafficking—is also unavailing. Defendant
> contends that Congress lacked the power under the Constitution's Necessary and
> Proper Clause to expand the scope of an international treaty dealing with sex
> trafficking—the United Nations Convention Against Transnational Organized
> Crime and the Protocols. In particular, Defendant contends that the international
> treaty demands that state parties criminalize certain offenses that are transnational
> in nature, and that § 1591(a) goes well beyond this in punishing purely domestic
> conduct. Not surprisingly, Defendant has offered no cases to support his argument
> that § 1591(a) is unconstitutional. This is because Congress's authority to enact the
> TVPA does not derive from an international treaty, but instead from the Commerce
> Clause of the Constitution.
>
> Under the Commerce Clause, Congress has the "power to regulate purely local
> activities that are part of an economic 'class of activities' that have a substantial
> effect on interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 17 (2005). Congress

Appx0017

has concluded that trafficking of persons "substantially affects interstate and foreign commerce." 22 U.S.C. § 7101(b)(12); *see also United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir. 2007) ("Congress found that trafficking of persons has an aggregate economic impact on interstate and foreign commerce . . . and we cannot say that this finding is irrational.").

Every court that has considered whether the TVPA and specifically whether § 1591's prohibition of interstate (as opposed to international) trafficking is a valid exercise of Congress's authority under the Commerce Clause, has concluded that it is. *See, e.g., United States v. Walls*, 784 F.3d 543, 548-49 (9th Cir. 2015) (concluding that the Commerce Clause gave Congress authority to regulate human trafficking and enact the TVPA); *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir. 2007) (affirming constitutionality of § 1591 and the TVPA as applied to the defendant's human trafficking, which occurred solely in Florida); *United States v. Campbell*, 111 F. Supp. 3d 340, 346 (W.D.N.Y. 2015) (concluding that § 1591 was a valid exercise of the Congress's power under the Commerce Clause and that the defendant's conspiracy to commit sex trafficking, which occurred solely in New York, had a substantial impact on interstate commerce); *United States v. Paris*, No. 06-64, 2007 WL 3124724, at *8 (D. Conn. Oct. 24, 2007) (rejecting argument that Congress lacked power to regulate purely national sex trafficking).

(Order, ECF No. 154.) Defendant was also forbidden from making these incorrect arguments before the jury in his proposed opening statement slideshow presentation, as such arguments were not within its purview and would only serve to confuse the issues. Defendant's persistence in making a meritless claim will not satisfy the legal innocence standard. Defendant has failed to show that he is legally or factually innocent.

### 2. *The Government would be prejudiced by Defendant's withdrawal.*

Defendant also baselessly asserts that the Government would not be prejudiced if he were permitted to withdraw his guilty plea. However, where the Government is ready for—and in this case proceeds to—trial, prejudice is presumed. *United States v. Crowley*, 529 F.2d 1066, 1072 (3d Cir. 1976) (finding "[t]he existence of prejudice to the Government through defendant's entering the plea on the day of trial . . . when jurors, witnesses and court personnel had been assembled for the trial, and then making the request for withdrawal of the plea several days later . . ."); *United States v. McLaughlin*, 647 F. App'x 136, 142 n.4 (3d Cir. 2016) (observing that

8

"the [G]overnment would be prejudiced" where the defendant entered a guilty plea on the first

day of trial and withdrawal of the plea would force the Government to "reassemble witnesses,

court personnel and jurors, all of which had already been assembled once on the day McLaughlin

pleaded guilty"); *United States v. Davis*, 106 F. App'x 788, 790 (3d Cir. 2004) ("it clear that the

[G]overnment would suffer some degree of prejudice because Davis entered his plea on the day

the trial was set to begin"). Here, the Government offered the testimony of two witnesses before

Defendant entered his plea of guilty, including the testimony of a police officer who had traveled

to Pennsylvania from North Carolina for trial. In addition, the Government would have been

required to offer the testimony of the two victims of sex trafficking, who were minors at the time

of the offenses. Defendant's choice to withdraw his guilty plea would prejudice the Government

by greatly inconveniencing its out-of-state witnesses, its young victim-witnesses, and all the

other witnesses expected to testify. Permitting Defendant to withdraw his plea would

undoubtedly prejudice the Government.

> 3. *No strong reason merits permitting Defendant to withdraw his guilty*
> *plea.*

Finally, Defendant baselessly asserts that he did not knowingly and voluntarily enter his

guilty plea. Defendant makes numerous complaints about counsel's performance, all of which

are belied by the record. Defendant has not raised any viable reason why he should be permitted

to withdraw his plea of guilty.

First, Defendant asserts that counsel incorrectly informed Defendant that the maximum

allowable fine for his convictions was the minimum required by statute and never told Defendant

which appellate rights he would forfeit following his plea. (Def.'s Mot., 3, 5). However, the

Court correctly informed Defendant of the fines and his remaining appellate rights at the plea

hearing. (Tr. of Guilty Plea Hr'g at 7-9.) Second, Defendant asserts that he was told he needed

to accept or reject the offer immediately, and that neither counsel were prepared for trial and had

no defense. (Def.'s Mot., 3-4.) We do not doubt that the Government would not leave such a

generous offer open for Defendant to take at his convenience after the jury had been empaneled.

Moreover, even if Defendant were correct that counsel was unprepared, this would likely be a

result of Defendant's actions; he repeatedly insisted that he would represent himself and then

made a bizarre, incriminating opening statement that would have left any lawyer fumbling for a

viable strategy.  Third, Defendant complains that counsel incorrectly advised Defendant's

family, who spoke with him prior to his plea, that the agreement was for ten years of

imprisonment and would run concurrently to any violation of supervised release.  (*Id.* at 4.)

What Defendant's family believed is of no consequence.  Defendant was correctly informed of

the terms of his plea both in writing and orally, and he told the Court that the Government made

him no promises outside of the written agreement. (Tr. of Guilty Plea Hr'g at 12.)  Fourth,

Defendant asserts that counsel failed to inform him that he could have requested a continuance or

extended recess to consider the plea. (Def.'s Mot., 5.)  The Court granted the Defendant

additional time following the lunch recess to negotiate.  Considering the fact that the trial had

begun, a request for further time would not have been granted.  Fifth, Defendant asserts that he

did not admit to any wrongdoing following the plea colloquy. (Def.'s Mot., 7.)  The transcript

from the hearing shows that is patently false. (Tr. of Guilty Plea Hr'g at 18.)

In addition, Defendant asserts that, despite his sworn statement to the court that he was

satisfied with counsel's performance, (*id.* at 9-10), Defendant had in fact lied to the Court that he

was satisfied with counsel's performance "simply to move the process alon[g] because at that

point it felt pointless to say no." (Def.'s Mot., 5).  Defendant has proffered no evidence that

could overcome the strong presumption that Defendant was telling the truth when he entered his

plea under oath before the Court. *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977) ( "Solemn

declarations in open court carry a strong presumption of verity."); *United States v. Thomas,* 165

F. App'x 138, 141 (3d Cir. 2006) (holding that a defendant's motion to withdraw his plea based

on ineffectiveness was "undermined by his statements at his plea colloquy that he was satisfied

to have his lawyer represent him").

 Furthermore, Defendant complains that counsel failed to inform him that he could have

proceeded *pro se* if he wished. (Def.'s Mot., 5.) His assumption is false. As described above,

Defendant repeatedly changed his mind about whether to have counsel represent him, and he

began litigating the trial *pro se* with standby counsel. The Court would not have entertained

another request—the second during the jury trial alone—to change his representation status.

Defendant's desire to continue to waffle about his representation status is not valid reason to

withdraw his plea of guilty.

 Finally, Defendant asserts a new argument in his reply brief, (ECF No. 190), that his

sentence was illegal because his plea agreement contained a provision asserting that any

violation of supervised release for committing certain child exploitation crimes would result in

an additional minimum of five years in prison, pursuant to 18 U.S.C. § 3583(k) without a jury

deciding the underlying facts. Defendant correctly states that Section 3583(k) was ruled

unconstitutional in *United States v. Haymond*, 139 S. Ct. 2369 (2019), because the sentence

would only be imposed upon a judicial factual finding, in violation of *Apprendi v. New Jersey*,

530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013).

 This provision of the plea agreement, which incorrectly states the law, does not

necessitate withdrawal. *Apprendi* held that "any fact [other than the fact of a prior conviction]

that increases the penalty for a crime beyond the prescribed statutory maximum must be

submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. An *Apprendi*

violation occurs only where there is improper judicial fact finding and a sentence that exceeds

the original statutory maximum sentence. *See United States v. Williams*, 235 F.3d 858, 863 (3d

Cir. 2000) ("*Apprendi* is not applicable to Williams' sentence, because the sentence actually

imposed (seven years and one month) was well under the original statutory maximum of 20

years."). The Third Circuit observed that the *Apprendi* decision suggests that "a District Court's

sentence that is under the statutory maximum cannot be constitutionally objectionable

under *Apprendi*." *Id.*; *see United States v. Luciano*, 311 F.3d 146, 151 (2d Cir. 2002) ("Violation

of *Apprendi* arises when the defendant is sentenced on the basis of a triggering fact not found by

the jury to a sentence that exceeds the maximum that would have been applicable but for the

triggering fact."); *United States v. Robinson*, 241 F.3d 115, 121 (1st Cir. 2001) ("theoretical

exposure to a higher sentence, unaccompanied by the imposition of a sentence that in fact

exceeds the otherwise-applicable statutory maximum, is of no consequence."). Defendant's

alleged *Apprendi* violation is an entirely theoretical assertion of harm. Because he has not been

sentenced as a result of judicial fact-finding, no *Apprendi* error occurred.[1]

---

[1] Moreover, even if the provision was in error, it was harmless because Defendant cannot show that absent the provision—which is unenforceable but appeared to result in a higher sentence— he would not have entered a plea of guilty. *See United States v. Dixon*, 308 F.3d 229, 236 (3d Cir. 2002) (holding that the possibility that the defendant would not have plead guilty had the court not overstated the maximum sentence was insufficient to establish error); *United States v. Powell*, 269 F.3d 175, 185 (3d Cir. 2001) (establishing that the test for harmless error is "whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty.").

Appx0022

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's *pro se* Motion to Withdraw the Guilty Plea

Pursuant to Rule 11(d)(2)(B) will be denied.  An appropriate order follows.


**BY THE COURT:**


*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

13

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 18-524 |
| VICTOR CLAYTON | : | |

## ORDER

**AND NOW**, this 8th day of July 2022, upon consideration of Defendant Victor Clayton's

*pro se* Motion to Withdraw the Guilty Plea Pursuant to Rule 11(d)(2)(B) (ECF No. 181), it is

**ORDERED** that the Motion is **DENIED**.

**IT IS SO ORDERED.**

BY THE COURT:

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 18-524 |
| VICTOR CLAYTON | : | |
| | : | |

### ORDER

**AND NOW**, this 15th day of September 2022, upon consideration of Defendant Victor

Clayton's *pro se* Motion for Reconsideration Denying the Motion to Withdraw the Plea

Agreement and Request for an Evidentiary Hearing (ECF No. 206) and *pro se* Motion for

Reconsideration and Clarification (ECF No. 213), it is **ORDERED** that the Motions are

**DENIED.**[1]

   **IT IS SO ORDERED.**

                                          **BY THE COURT:**


                                          */s/ R. Barclay Surrick*
                                          **R. BARCLAY SURRICK, J.**

---

[1] Following multiple changes regarding whether he wished to proceed *pro se* at trial,
Defendant Victor Clayton entered a plea of guilty during the jury trial to four counts of sex
trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(a), with a negotiated
sentence of fifteen years in prison. Sentence has not yet been imposed. Defendant previously
filed a *pro se* Motion to Withdraw the Guilty Plea Pursuant to Rule 11(d)(2)(B) (ECF No. 181),
which we denied. He now files two *pro se* motions to reconsider, both of which address largely
the same complaints. The instant motions will be denied as well.
   The motions are denied for two reasons. First, Defendant improperly proceeded by way
of hybrid representation, as he has filed these motions *pro se* but has two court-appointed
attorneys. We explained in multiple prior opinions that this is improper, particularly in light of
Defendant's repeated changes over whether to be represented by counsel. (ECF No. 202, 207.)

The instant motions are yet another meritless attempt to delay sentencing. They will be denied for the same reason.

Second, Defendant's motions are meritless. Defendant argues that the Government broke the agreement in the guilty plea when it included a provision asserting that any violation of supervised release for committing certain child exploitation crimes would result in an additional minimum of five years in prison, pursuant to 18 U.S.C. § 3583(k), without a jury deciding the underlying facts. Section 3583(k) was ruled unconstitutional in *United States v. Haymond*, 139 S. Ct. 2369 (2019). Defendant nonsensically complains that the Government is unable to "uphold its side of the bargain," which would, in the case of a violation of that provision, result in a higher sentence than the one he will actually receive. (ECF No. 206.) He complains that the Court is essentially picking and choosing which provisions of the sentence to impose. As we noted in our memorandum opinion, no "triggering fact" (in this case, violation of supervised release by committing certain child exploitation crimes) has occurred that would render his sentence unconstitutional. Were a triggering fact to occur, then Defendant would receive a *better* deal than he anticipated because the Court would be unable to impose a sentence pursuant to that provision. Receiving a better sentence than originally anticipated does not provide a basis upon which to withdraw a guilty plea because Defendant still would have entered a plea of guilty absent the inclusion of the section 3583(k) provision.

Further, Defendant complains that he was never told to which charge he entered the plea of guilty. This is false. The Court verbally confirmed the charges to which he pled guilty with Defendant (ECF No. 182, 20), and the charges were specified in his written guilty plea agreement (ECF No. 177 ¶ 1). Defendant also asserts that he did not know that he needed to admit to the crimes before pleading guilty. But Defendant *did* admit guilt, without any questions or objections to doing so. The Government read the facts into the record (ECF No. 182, 14-18), and then the Court and the Defendant had the following interaction:

| | |
|---|---|
| THE COURT: | All right. Mr. Clayton, you heard the facts that were just recited by the Assistant United States Attorney, correct? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | **And you understand that you are admitting those facts.** |
| THE DEFENDANT: | **Yes, sir.** |
| THE COURT: | You understand that if you did the things you've just admitted, you're in fact guilty of these offenses. You understand that? |
| THE DEFENDANT: | Yes, sir. |

(*Id.* at 20) (emphasis added). Defendant admitted his guilt.

Because Defendant's motions were improperly filed *pro se* and are meritless, they will be denied.

Appx0026